**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **A.P., A Minor, By His Parent, E.F.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **LOWER MERION SCHOOL DISTRICT** | : | **NO. 18-4331** |

## <u>MEMORANDUM OPINION</u>

**Savage, J.**                                                              **August 1, 2019**

In this action brought under the Individuals with Disabilities Education Act ("IDEA"), E.F., the mother of a disabled child seeking compensatory education from the Lower Merion School District ("District"), appeals the decision of the Office of Dispute Resolution ("ODR") hearing officer affirming the District's determination that her child was not a resident of the District at the time she attempted to enroll him. Because a school district is obligated to provide a free appropriate public education ("FAPE") only to students who reside in the district, the hearing officer found that the student was not entitled to IDEA services from the District, and dismissed E.F.'s due process complaint without deciding the underlying special education claims.

Both parties have moved for summary judgment. Although E.F. agrees with the hearing officer's finding that she was living in the District on the date of the attempted enrollment, she argues that he erred in applying Maryland law to conclude that she and her son were residents of Maryland and not the District. Although the District disagrees with the hearing officer's finding that E.F. was living in the District on that day, it argues that the hearing officer's ultimate conclusion that its determination of non-residency was supported by substantial evidence was correct.

We find that the hearing officer erred when he limited the time period for assessing where E.F. was living to the date of the attempted enrollment. However, because there is substantial evidence supporting his conclusion that E.F. was not a resident of the District, we conclude that the legal error was harmless. Although the hearing officer did consider Maryland law, he did not, as E.F. argues, apply it in determining E.F.'s residency under Pennsylvania law. Therefore, we affirm the ODR's decision upholding the District's determination of non-residency and grant judgment in favor of the District.

**Background**

E.F., the mother and sole guardian of A.P. and his two sisters, enrolled her children in the Lower Merion School District during the 2014-15 school year. A.P., a disabled child entitled to special education services under the IDEA, attended middle school, and his two sisters attended elementary school. During that school year, the family lived in their home in Wynnewood, which is located in the District.[1]

Dissatisfied with the District's implementation of A.P.'s individual educational plan, E.F. sought alternate placements or compensatory education. In April of 2015, E.F. informed the District that she wanted it to consider the Ivymount School, a private day school located in Rockville, Maryland, as a placement for A.P.[2] In May, the parties engaged in negotiations regarding A.P.'s placement at a non-District school. The District offered E.F. alternative placements and an Educational Services Agreement ("ESA"). In the proposed ESA, the District agreed to reimburse E.F. for the cost of tuition for the 2015-

---

[1] Transcript of June 11, 2018 Due Process Hr'g ("Tr.") 20:21-25 – 21:1-9; Findings of Fact ("FOF") ¶¶ 1-2, Final Decision and Order, ODR No. 20363-1718AS, July 12, 2018 ("Final Decision") (Doc. No. 14-13).

[2] Doc. No. 14-8 at ECF 26; FOF ¶ 3.

16 and 2016-17 school years at an educational institution selected by her. As a condition, she had to reside in the District during those two years. Because she wanted to send A.P. to Ivymount, which was almost a three-hour drive from the District, she rejected the offer due to the residency requirement.[3]

Without reaching an agreement with the District, E.F. enrolled A.P. at Ivymount. On June 19, 2015, she signed a two-year lease for a single-family house in Bethesda, Maryland. The rental was $3,800.00 a month for the term from August 1, 2015 to July 31, 2017.[4] Ten days later, she signed a tuition contract with Ivymount for A.P. to attend seventh grade for the upcoming school year, starting August 26, 2015, and ending June 10, 2016.[5]

On August 24, 2015, E.F. moved to Maryland with A.P. and her two daughters. She enrolled A.P.'s sisters in a nearby public elementary school.[6] The house was within a fifteen-minute drive of Ivymount and the daughters' public school. It was fully stocked with clothing, school supplies, furniture and bedding. The lease allowed the family dog and cat to live there.[7]

During the 2015-16 school year, A.P. attended Ivymount and his sisters attended Maryland public school. During the school week, they slept in Maryland. On weekends and holidays, they stayed in Wynnewood and returned to Maryland on Sunday evenings.

---

[3] Tr. 28:18-25-29:1-3, 158:17-25 – 159:1-8, 186:6-10, 23-25 – 187:1-18; Doc. No. 14-8 at ECF 23, 33-40.

[4] Tr. 28:18-22; Doc. No. 14-7 at ECF 5-11, 20; FOF ¶ 5.

[5] Doc. No. 14-7 at ECF 22-25; FOF ¶ 4.

[6] Tr. 27:4-12, 23-25, 28:1-2, 18-21, 29:16-25 – 30:1-13; FOF ¶ 6.

[7] Tr. 27:23-25, 29:16-18, 24-25 – 30:1-13, 250:25 – 251:1-4, 14-17.

E.F. spent school days and nights in Maryland except when she worked in Philadelphia as an emergency room doctor and slept at her District house. For nine months of the year, she worked two blocks of four nightshifts each month, for a total of eight nightshifts per month. In February, July and December, E.F. worked a third block of shifts to cover the Presidents' Day, July Fourth and Christmas holidays. When working in Philadelphia on weeknights, she arranged child care for the children in Maryland.[8]

On October 8, 2015, after receiving E.F.'s request to stop sending her automated notifications of A.P.'s absences from school, the District marked A.P. as "withdrawn" from the District as of the first day of the 2015-16 school year. It noted that "he moved from the district."[9]

In December 2015, midway through A.P.'s school year at Ivymount, E.F. filed a due process complaint against the District with the ODR, seeking reimbursement for the cost of the school's tuition.[10] In February of 2016, after a resolution meeting, E.F. provided the District with a copy of her Maryland lease and a statement of tuition payments she had made to Ivymount for that school year.[11] Three months later, in May of 2016, E.F. and the District resolved the December 2015 due process complaint and entered into an ESA, providing E.F. reimbursement for tuition at Ivymount for the 2015-

---

[8] Tr. 21:16-23; 29:11-13, 44:19-25, 45:23-24, 46:1-2, 47:3-22, 48:1-2, 5-18, 49:1-9, 12-16, 23-25 – 50:1, 203:20-25, 254:11-21, 255:5-17; Doc. No. 14-10 at ECF 6; FOF ¶¶ 6, a., b., c., d., e.

[9] Doc. No. 14-7 at ECF 31-32; FOF ¶ 7.

[10] Doc. No. 14-7 at ECF 235-237; FOF ¶ 8.

[11] Tr. 126:10-24, 127:8-25 – 128:1-5; Doc. No. 14-7 at ECF 238-63.

16 school year. Notably, because the District viewed the family as not residing in the District, the Agreement did not require the family to be District residents for that year.[12]

On June 1, 2016, E.F. signed an agreement with Ivymount for the 2016-17 school year and paid a $4,685.00 deposit. The enrollment included an extended school year programming ("ESY") session in July 2016. On June 9, at the same time she submitted receipts for reimbursement for A.P.'s Ivymount tuition for the 2015-16 school year and for the ESY session in July of 2016, E.F.'s counsel sent the District the enrollment agreement and proof of payment of the tuition deposit for the 2016-17 school year.[13]

From June 10, the last day of Ivymount's 2015-16 school year, to June 20, 2016, her daughters' last day of school, E.F. resided with her children in Maryland.[14] At the end of the day on June 20, E.F. and the children went back to their house in the District where they stayed until A.P.'s ESY session at Ivymount began on July 5. They did not pack up the house in Maryland, leaving everything there so that "it was waiting for [them] when [they] got back."[15]

On June 20, E.F. applied to enroll A.P., but not her daughters, in the District for the 2016–17 school year by completing the online new student registration.[16] On July 1, she met with the District registrar to complete A.P.'s enrollment. She presented utility and tax bills and the deed to her Wynnewood home, A.P.'s health records, his Ivymount report

---

[12] Tr. 128:11-25 – 129:1-20, 132:2-8; Doc. No. 14-7 at ECF 33-41; FOF ¶ 9.

[13] Tr. 130:1-4, 223:4-11, 225:10-21, 234:7-22, 239:25 – 240:1-3, Doc. No. 14-7 at ECF 46-49; FOF ¶ 10.

[14] Tr. 37:10-24, 124:2-7, 240:5-7, 249:7-24; Doc. No. 14-10 at ECF 1-3, 6; FOF ¶¶ 11, f, h.

[15] Tr. 241:22-25 – 242:1-5, 250:25 – 251:1-4, 9-20, 262:3-23; FOF ¶¶ g., i., j.

[16] Tr. 28:3-10, 30:14-25 – 31:1-9, 38:7-25, 61:15-17, 89:20-25 – 90:1-5, 206:21-25 – 207:1-15; Doc. No. 14-7 at ECF 62-66; FOF ¶¶ 12, 13, 17.

card and the IEP. She told the registrar that A.P. was attending school out-of-state and that she wanted to continue sending him there for the upcoming ESY and regular school year because the District was unable to educate him. Even though she did not enroll him in a District school, she requested he be enrolled in the District so he could be evaluated for special education services. The paperwork she provided met the registration requirements on the Registration Checklist. Because A.P. was a special education student, the registrar sent the enrollment package to Kimberly Fraser, the District's Director of Special Education and Student Services, and informed her that E.F. "re-registered him for evaluation purposes."[17]

On July 5, 2016, E.F. emailed Fraser to inform her that she had "re-enrolled" A.P. in the District and to request an IEP meeting. She stated that since A.P. "has special needs" the District "cannot meet, I understand he requires a continued out of district school placement." She also noted that "he has thrived at Ivymount."[18]

Fraser received A.P.'s enrollment documents from the registrar and E.F.'s July 5, 2016 email a few weeks later.[19] Because the District and E.F. had been engaged in discussions and negotiations regarding A.P.'s placement at a non-District school since April of 2015, Fraser noticed that the enrollment documents were inconsistent with what she knew about the family's school enrollment and living arrangements during the past

---

[17] Tr. 34:13-20, 39:11-14, 41:24-25 – 42:1, 8-25 – 43:1-4, 10-12, 66:12-25 – 67:1-2, 70:14-25 – 71:1-11, 22-24, 72:2-17, 79:18-23, 99:19-25 – 100:1-8, 13-25 – 101:1-25, 104:17-23, 105:11-25 – 106:1-5, 108:13-19, 115:2-25, 119:1-4, 18-25 – 120:1-3, 121:11-14, 122:11-17, 134:21-24; Doc. No. 14-7 at ECF 61, 69-110, 284; FOF ¶¶ 14, 15, k.

[18] Doc. No. 14-7 at ECF 295; FOF ¶ 20.

[19] Tr. 44:6-15, 130:22-25 – 131:1, 148:24-25 – 149:1-5. Fraser did not view the documents immediately because she had been on vacation in early July. Tr. 144:16-23.

year and the plans to continue that arrangement in the upcoming school year. She was aware that E.F. had been residing with her three children in Maryland in a house with a year remaining on a two-year lease; had already enrolled A.P. in Ivymount for the 2016-17 school year; had previously enrolled her daughters in the Maryland public schools the previous school year; and did not attempt to enroll them in the District on June 20, 2016. Based upon what she knew, Fraser believed that E.F. intended for A.P. to attend Ivymount and her daughters to attend public school in Maryland, and the family to live in Maryland during the 2016-17 school year. Thus, she determined that E.F. was a resident of Maryland and not the District.[20]

Several months earlier, when E.F. and the District were negotiating a settlement of the December 2015 Due Process case, it became clear that they disagreed about the family's residency.[21] When E.F. sought to enroll A.P. in the District for the 2016-17 school year, Fraser considered residency an issue. Consequently, Fraser responded to E.F.'s July 5, 2016 email by referring her to counsel for the District. On July 13, 2016, counsel for the District notified E.F.'s counsel that E.F.'s "attempted enrollment" of A.P. for the 2016-17 school year had been denied for failure to establish residency. The District stated that A.P. was not a District resident based on E.F.'s previous representations that she was primarily residing in Maryland with her three children in the middle of a two-year lease and the children attended school there. Advising E.F. that residency in the district was a prerequisite for enrollment or tuition reimbursement, the District informed her that

---

[20] Tr. 126:10-24, 127:8-18, 131:2-25 – 132:1-8, 133:5-25, 143:8-25 – 144:1-4, 19-25 – 145:1-11, 155:15-25, 172:10-16, 181:21-25 – 182:1-4.

[21] This disagreement was the reason the settlement agreement did not require her to be a District resident for the 2015-16 school year.

A.P. was ineligible "to attend school in the District or [another school] at the District's expense."[22]

One week later, the District notified E.F. that she could challenge the District's non-residency determination by requesting a hearing before the Lower Merion Board of School Directors or an appointed hearing officer. Instead, E.F. filed a due process complaint with ODR. She claimed that the District's failure to offer appropriate extended school year services in the summer of 2016 and a special education placement for the 2016–17 school year constituted a denial of FAPE in violation of the IDEA. The District moved to dismiss the complaint on the basis that E.F. and A.P. were non-residents.[23] Concluding that he lacked jurisdiction to determine residency, the hearing officer granted Lower Merion's motion to dismiss, without reaching the substantive claims.[24] On appeal to this court, we held that the ODR hearing officer had jurisdiction and the obligation to adjudicate the residency dispute as a necessary part of the due process hearing mandated by the IDEA. Consequently, we remanded the case to the ODR to determine the threshold issue of residency as part of the due process hearing. *A.P.*, 294 F. Supp. 3d at 411.

Meanwhile, from July 5 to 15, 2016, A.P. attended Ivymount's ESY session. During the weekdays and weeknights during this ESY session, A.P. resided in Maryland. E.F. gave contradictory testimony about where she and her daughters resided at that

---

[22] Tr. 131:15-25 – 132:1-8, 170:4-17, 183:11-19, 184:1-5; Doc. No. 14-7 at ECF 111-112, 295; FOF ¶ 21.

[23] *A.P. by E.F. v. Lower Merion Sch. Dist.*, 294 F. Supp. 3d 406, 408 (E.D. Pa. 2018).

[24] *A.P.*, 294 F. Supp. 3d at 409.

time.[25]  From July 17 through 29, 2016, A.P. attended an overnight camp in Pennsylvania. At the same time, E.F. and her daughters lived in the house in the District while the daughters attended day camps in the area.  From July 30 through August 12, E.F. and all three children lived in the District house while enjoying local summer activities.  From August 12 through 23, 2016, E.F. and her children vacationed in Massachusetts.  On August 23, E.F. and A.P. returned to the house in Maryland.  The following day, A.P. attended his first day of Ivymount's regular 2016-17 school year.  Later that month, A.P.'s sisters returned from Massachusetts to Maryland to begin the Maryland public school year.[26]

For the rest of the 2016-17 school year, the living and working arrangements were as they had been during the previous school year.  A.P. attended Ivymount and his sisters attended Maryland public schools during the weekdays and slept in their Maryland house on school nights.  On weekends and holidays, they went to the house in the District and returned to Maryland on Sunday evenings.  E.F. spent school days and school nights in Maryland unless she was working in Philadelphia and sleeping at the house in the District.[27]

On April 3, 2017, E.F. applied online to enroll A.P. and her daughters in the District for the 2017-18 school year.  On the application, she indicated that A.P. had been

---

[25] Tr. 22:8-14, 50:16-23, 218:3-18, 244:14-21, 247:4-8, 256:8-25, 262:24-25 – 263:1-15; Doc. No. 14-10 at ECF 5; FOF ¶ l.  As explained later, where E.F. resided during the summer of 2016 is not relevant to our determination of whether the District's non-residency determination is supported by substantial evidence.

[26] Tr. 21:24-25 – 22:1-7, 24:6-15, 26:11-17, 27:25 – 28:1-13, 51:4-6, 219:3-25, 221:4-8, 245:3-19, 25 – 246:1-5, 247:10-25 – 248:1-20, 259:1-10, 265:18-25; FOF ¶¶ m., n., o., p.

[27] Tr. 22:8-10, 51:7-14; Doc. No. 14-10 at ECF 5; FOF ¶¶ o., p.

attending Ivymount since August of 2015 and would continue attending until June of 2017. E.F. later met with the registrar to complete enrollment of all three children. On June 14, 2017, Fraser accepted the enrollment of the three children. She based this decision on her knowledge that the Maryland lease was set to expire at the end of the current school year and the fact that E.F. applied to enroll *all* of her children. Once A.P. was enrolled, Fraser granted permission to re-evaluate him for programming. However, no evaluation was conducted because E.F. refused to consent to it.[28]

By July of 2017, E.F. and the District entered into a new Educational Services Agreement, where the District agreed to reimburse E.F. for tuition for A.P. to attend an educational institution of his choice for the 2017-18 school year. The agreement contained a residency clause, requiring E.F. to reside in the District during the school year. Pursuant to the ESA, A.P. began attending a residential school in Connecticut, for which the District reimbursed E.F. She withdrew her daughters' enrollment in the District because they were attending a private school.[29]

*The Residency Proceedings Before the Hearing Officer*

The hearing officer issued a preliminary residency determination upholding the District's decision to deny enrollment because E.F. was not a resident of the District.[30] After E.F. submitted an affidavit at his invitation, the hearing officer held a hearing.[31] In

---

[28] Tr. 83:13-25 – 84:1-19, 87:3-21, 134:1-19, 135:8-21, 150:15-25 – 151:1-5, 24-25, 154:1-10, 185:23-25; Doc. No. 14-8 at ECF 105-109.

[29] Tr. 136:4-25 – 137:1-15, 142:5-20, 185:1-4, 8-25 – 186:1, 187:1-18, 193:5-7.

[30] Prelim. Residency Determination, ODR No. 20363-1718AS, Apr. 3, 2018 ("Prelim. Decision") (Doc. No. 14-3).

[31] Prelim. Decision at 8 and Order ¶ 2; Pet'r's Aff. of Add'l Facts (Doc. No. 14-4).

his final decision, he held that the District established that E.F. was a resident of Maryland at the time of attempted enrollment even though she "was physically within the District."[32]

In his preliminary residency determination, the hearing officer concluded that the District's decision to deny A.P.'s enrollment because E.F. was not a resident of the District was supported by substantial evidence. He found that the undisputed evidence demonstrated that E.F. and her children did not reside in the District during the 2015-16 and the 2016-17 school years.[33] He also found that it was more likely than not that the family remained in Maryland between the end of the 2015-16 school year and July 5, 2016, the first day of Ivymount's ESY.[34] In his view, the only question was where E.F. was living and physically located on June 20, 2016, the date that she applied to enroll A.P. in the District for the 2016-17 school year. He ruled that where E.F. *intended* to reside during the upcoming school year was not relevant to the residency determination.[35] Finding that E.F. was living in Maryland on June 20, 2016, he concluded that the District had presented substantial evidence supporting its non-residency determination.[36]

Because E.F. had not made any averments regarding where she resided on the date of the attempted enrollment, the hearing officer granted her leave to move for reconsideration of his preliminary determination to proffer evidence that she resided in the District on June 20, 2016.[37] E.F. submitted an affidavit in which she declared that at

---

[32] Final Decision at 8.

[33] Prelim. Decision at 8.

[34] *Id.* at 6, 8.

[35] *Id.* at 6.

[36] *Id.* at 8; Order ¶ 1.

[37] Prelim. Decision at 8; Order ¶ 2.

the end of the 2015-16 school year "my family and I no longer resided in our Maryland home as due to my working schedule and the children attending summer programs within Pennsylvania," and that from June 20 until July 13, 2016, her "family was residing exclusively" in their Lower Merion home except for when they were on vacation.[38] She also stated that when she applied to enroll A.P. she "fully intended for [him] to attend school in the District for the 2016-17 school year, based upon the placement options to be presented."[39] Because it was disputed where E.F. was at the time of the attempted enrollment, the hearing officer conducted a hearing.

In his final decision, the hearing officer changed his preliminary findings regarding where E.F. was physically located on June 20, 2016, the date of the attempted enrollment. This time, he determined that she "was living in her Pennsylvania home" "within the District" on June 20, 2016.[40] However, based on his additional findings that A.P.'s sisters were continuously enrolled in Maryland public schools before, during and after the time of the attempted enrollment, the hearing officer concluded that the fact that the mother was physically living in the District at the time of the attempted enrollment was "[not] sufficient to establish residency for IDEA purposes."[41] In reaching this conclusion, he accurately described Maryland's "bona fide residency requirement," which requires children to attend public school in the district where the child's parent or guardian is "domiciled."[42] Because E.F.'s daughters were continuously enrolled in Maryland public

---

[38] Pet'r's Aff. of Add'l Facts (Doc. No. 14-4) ¶¶ 3-4.

[39] *Id.* ¶ 10.

[40] Final Decision at 6.

[41] *Id.* at 6-7.

[42] *Id.*

schools, the hearing officer reasoned that he was required to find that E.F. was a domiciliary of Maryland during those two years or else she would have been fraudulently claiming residency in Maryland. He further reasoned that because Pennsylvania law prohibits a parent from claiming "simultaneous residency in multiple school districts for enrollment purposes," she could not be deemed a resident of Lower Merion School District while she was also a resident of the Maryland school district.[43] Consequently, he concluded that E.F. "cannot claim residency within the District only during the attempted re-enrollment in the summer of 2016 while simultaneously claiming residency in [Maryland] continuously through the 2015-16 and 2016-17 school years."[44]

Despite his finding that E.F. "was physically within the District" on the date she attempted enrollment, the hearing officer reached the same conclusion that he had reached in his preliminary decision – the District's determination of A.P.'s non-residency was supported by substantial evidence because it had established that E.F. was a Maryland resident at the time of the attempted enrollment.[45] The District's non-residency determination was affirmed, and E.F.'s due process complaint was dismissed.[46]

In her appeal to this court, E.F. contends that the hearing officer erred in concluding that the District presented substantial evidence supporting its determination that she was not a District resident in June of 2016. She challenges the hearing officer's determination that the applicable time period for assessing her physical presence in the District to

---

[43] *Id.* at 7.

[44] *Id.*

[45] *Id.* at 8.

[46] *Id.*

determine residency is limited to the date of the attempted enrollment. E.F. posits that the time period should run from June 20, 2016, the enrollment application date, through July 20, 2016, when the District formally rejected the enrollment, which she refers to as the "Enrollment Period."

E.F. contends that a comparison of the time of her physical presence in Maryland to that spent in Pennsylvania during the Enrollment Period shows that she was "physically present predominantly at the Wynnewood Home." She points to undisputed evidence showing that between June 20 and July 5, and between July 15 and August 12, 2016, she resided exclusively in the District and did not spend any overnights in Maryland, and between July 5 and 15, while A.P. attended the ESY session, she spent at most seven nights in Maryland. She argues that the District failed to rebut her testimony of her "overwhelmingly large physical presence" in the District during the Enrollment Period. She maintains that the District's reliance on the Maryland lease, her failure to enroll her daughters in the District, and Fraser's understanding that she wanted A.P. to attend Ivymount in the 2016-17 school year do not support its determination that she was not a District resident because this information pertains to E.F.'s physical presence during the previous school year. E.F. concedes that she "maintained a physical presence in the Maryland Home throughout the 2015-2016 school year," but she argues that where she resided the previous school year is not relevant to the District's residency determination because that is outside the applicable time period.[47]

E.F. also argues that the hearing officer erred when he applied Maryland residency requirements in determining her Pennsylvania residency. She disagrees with his legal

---

[47] Pl.'s Br. (Doc. No. 17) at 6, 10-13.

conclusions that Maryland law considers her a Maryland resident because her daughters were enrolled in public schools there and that Pennsylvania law precludes her from simultaneously claiming residency in the District.  Noting that A.P.'s sisters did not attend any Maryland public school during the Enrollment Period and E.F. sought to enroll A.P. in the District when she was residing there, she argues that her residency status during the school year preceding and following the Enrollment Period has no bearing on her residency status during the Enrollment Period, which she fixes as the limited period of June 20 through July 20, 2016.  She also objects to the hearing officer's characterization of her actions as "school shopping" because it is at odds with his findings that she testified credibly and consistently with her affidavit.[48]

The District argues that there is substantial evidence showing not only that E.F. was not residing in the District on the date of the attempted enrollment, but also that she was not a resident of the District during the entire summer of 2016.  To show that E.F. was not physically present in the District on the date of the attempted online enrollment, the District points to undisputed evidence that her daughters attended school in Maryland on that day.

The District points out that during the entire summer, E.F. had a year remaining on her two-year Maryland lease, had not attempted to enroll A.P.'s sisters in the District and had paid tuition to Ivymount for A.P. to attend the 2016-17 school year.  The District also points to contradictions between E.F.'s pre-hearing affidavit and her hearing testimony, and several inconsistencies in her hearing testimony.  For example, in her affidavit E.F. declared that after Ivymount's 2015-16 school year ended on June 10, 2016, she and her

---

[48] Pl.'s Br. at 14-16.

family resided exclusively in the District except for when they were on vacation. Yet, at the hearing, both E.F.'s testimony and documentary evidence confirmed that A.P. attended Ivymount's ESY session from July 5 through July 15, during which time he lived and slept in Maryland during the week. E.F. gave conflicting testimony about whether she and her daughters resided with A.P. in Maryland during that session. Additionally, it notes that A.P. attended a camp outside the District for two weeks in July, and the entire family was in Martha's Vineyard for two weeks in August.[49]

The parties have filed cross-motions for summary judgment.[50] They agree to the disposition of this case on the motions.

### Standard of Review

The typical route to contest a district's determination of non-residency is to request a hearing before the school board or a hearing officer appointed by the school board. *A.P.*, 294 F. Supp. 3d at 406, 412 & n.16. Either party may appeal from the school board's adjudication to the Court of Common Pleas of the county in which the school district is located.[51] *A.P.*, 294 F. Supp. 3d at 413 (citing 2 Pa. Cons. Stat. §§ 101, 553, 752; 42 Pa. Cons. Stat. § 933(a)(2)); *Whitacker-Reid v. Pottsgrove Sch. Dist.*, 160 A.3d 905, 912 n.13 (Pa. Commw. Ct. 2017) (citing 2 Pa. Cons. Stat. § 754; *Monaghan v. Bd. of Sch. Dirs. of Reading Sch. Dist.*, 618 A.2d 1239, 1241 (Pa. Commw. Ct. 1992) (As a local agency, the

---

[49] Def.'s Br. (Doc. No. 16-1) at 2-3, 10-13, 15.

[50] Neither party complied with the court's requirement to file a Statement of Undisputed Facts in support of the summary judgment motion.

[51] E.F. took a different route. She filed a FAPE due process complaint with the ODR. As we previously determined, the ODR Hearing Officer had jurisdiction to hear and decide the residency dispute. *A.P.*, 294 F. Supp. 3d at 411. After we remanded to the ODR, the hearing officer conducted residency proceedings and issued an adjudication.

school board's "final decision" is an "adjudication" subject to review by the Common Pleas court.)).  Where a complete record of the proceedings has been developed, the trial court need not take any additional evidence and can decide the appeal on the agency record. 2 Pa. Cons. Stat. § 754(b).

In reviewing a school board's adjudication of a residency determination, the Common Pleas court's scope of review is limited to determining whether findings of fact necessary to support the adjudication were supported by substantial evidence or whether "an error of law was committed."  *Behm v. Wilmington Area Sch. Dist.*, 996 A.2d 60, 64 n.6 (Pa. Commw. Ct. 2010) (citing 2 Pa.C.S. § 754(b)).  The federal court's standard of review is no different than that of the Common Pleas court.  Hence, we determine whether the hearing officer's factual findings were supported by substantial evidence or whether he committed an error of law.  *Id.*

The purpose of a residency hearing is to ensure that the school district's determination of non-residency is supported by substantial evidence.  *Whitacker-Reid*, 160 A.3d at 916, 917 (quoting *Behm*, 996 A.2d at 66).  This means there must be "substantial evidence" supporting all of the hearing officer's findings of fact necessary to uphold the District's conclusion that E.F. was not a resident of the district.  *Whitacker-Reid*, 160 A.3d at 916, 921.  Substantial evidence is defined as "evidence that a reasonable mind might accept as sufficient to support a conclusion."  *Whitacker-Reid*, 160 A.3d at 916 (quoting *Spencer v. City of Reading Charter Bd.*, 97 A.3d 834, 842 (Pa. Commw. Ct. 2014)).

As the fact finder, the hearing officer assesses credibility.  *Whitacker-Reid*, 160 A.3d at 916 (citation omitted).  A reviewing court may not reweigh the evidence or

substitute its own credibility determinations for that of the factfinder. *Kinavey v. W. Jefferson Hills Sch. Dist.*, No. 1081 C.D. 2015, 2016 WL 3266301, at *11 (Pa. Commw. Ct. June 15, 2016) (citing *Spencer*, 97 A.3d at 842, 844). However, a court can overturn a credibility determination that is arbitrary and capricious[52] or "so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *Whitacker-Reid*, 160 A.3d at 916 (quoting *Bonatesta v. N. Cambria Sch. Dist.*, 48 A.3d 552, 558 (Pa. Commw. Ct. 2012)). Additionally, "when performing a substantial evidence analysis," the reviewing court must consider the evidence in the light "most favorable to the party that prevailed before the fact finder." *Id.*

## Discussion

Pennsylvania law provides that a child who resides in a school district is entitled to attend public schools in that district. *See* 24 Pa. Cons. Stat. §§ 5-501(a), 13-1301; 22 Pa. Code § 11.11(a)(1). A school district is not required to enroll a child who does not reside in the district. 22 Pa. Code § 11.11(b) (A "school district . . . has no obligation to enroll a child until the parent . . . making the application has supplied proof of the child's age, *residence*, and immunizations as required by law.") (emphasis added). A child's district of residence is the school district in which his parent or guardian resides. 24 Pa. Cons. Stat. § 13-1302(a); 22 Pa. Code § 11.11(a)(1); *In re Residence Hearing Before Bd. of Sch. Directors, Cumberland Valley Sch. Dist.*, 744 A.2d 1272, 1274 (Pa. 2000).

---

[52] A "capricious disregard of evidence" means a "willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Agostino v. Twp. of Collier*, 968 A.2d 258, 264 (Pa. Commw. Ct. 2009) (quoting *Station Square Gaming L.P. v. Pa. Gaming Control Bd.*, 927 A.2d 232, 237 (Pa. 2007)).

The purpose of the residency requirement of § 1302 is to prevent "school district" shopping. *Velazquez ex rel. Speaks-Velazquez v. E. Stroudsburg Area Sch. Dist.*, 949 A.2d 354, 360 (Pa. Commw. Ct. 2008) (citing *Paek v. Pen Argyl Area Sch. Dist.*, 923 A.2d 563, 567 (Pa. Commw. Ct. 2007)). Accordingly, a child cannot have two residences for school residency purposes. *Mathias v. Richland Sch. Dist.*, 592 A.2d 811, 812 (Pa. Commw. Ct. 1991). Parents who own or rent property in multiple school districts cannot "choose between those properties on a given day just so their children can attend a particular school." *Paek*, 923 A.2d at 567.

The parent bears the initial burden of proof in school residency disputes. *Whitacker-Reid*, 160 A.3d at 917. The parent meets this burden by presenting sufficient evidence satisfying the district's enrollment requirements. *Id.* The burden then shifts to the District to present "substantial evidence" supporting its determination that the parent is not a resident of the District. *Id.* at 916, 917 (citation omitted).

The District concedes that E.F. satisfied her initial burden of proving that she met the District's enrollment requirements. She submitted documents satisfying the registration requirements.[53] Thus, we must determine whether the District has established, by substantial evidence, that E.F. was not a resident of the District.

As used in the Public School Code, "resides" means the "place where the custodial parent maintains a residence, and . . . it need not be a primary residence or domicile." *Cumberland Valley*, 744 A.2d at 1274. Residence and domicile are not interchangeable terms. The former means "physical presence" in a place and the latter means "permanent legal residence." *In re Du Puy's Estate*, 96 A.2d 318, 319-20 (Pa. 1953). "Residence" is

---

[53] *See* Def.'s Br. at 6; Tr. 72:2-17, 115:2-18.

"a factual place of abode evidenced by a person's physical presence in a particular place" and "a place where one actually lives or has a home."  *Cumberland Valley*, 744 A.2d at 1275 (citing *Commonwealth v. Ortiz*, 738 A.2d 403, 405 (Pa. 1999); *Norman v. Pa. Nat'l Ins. Co.*, 684 A.2d 189, 191 (Pa. Super. Ct. 1996)).  *See also Paek*, 923 A.2d at 567 (*Cumberland Valley*'s definition of a "residence" requires "actually living there and having a physical presence").  It is different from a "habitation," which has been defined as an "abode for the moment" or a place to "merely visit."  *Cumberland Valley*, 744 A.2d at 1275 (citing *In re Lesker*, 105 A.2d 376, 380 (Pa. 1954)).

"Domicile," in contrast, is the place where one presently resides coupled with the intent to remain there permanently or for the indefinite future.  *Cumberland Valley*, 744 A.2d at 1275 (citing *In re Prendergast*, 673 A.2d 324, 327 (Pa. 1996); *McCloskey v. McCloskey*, 336 A.2d 279, 280 (Pa. 1975)).  It is where a person has fixed her "permanent family home and principal establishment" and to which she always intends to return whenever she is absent from there.  *Cumberland Valley*, 744 A.2d at 1275 (citing *Prendergast*, 673 A.2d at 327; *Lesker*, 105 A.2d at 380; *Norman*, 684 A.2d at 191).  Domicile has been referred to as one's "permanent legal residence" or "bona fide residence" that the person designates as her official domicile for legal purposes.  *Cumberland Valley*, 744 A.2d at 1275 (citing *Du Puy's Estate*, 96 A.2d at 319-20).

In determining whether a parent resides in the district, courts generally compare the parent's physical presence at the two locations to determine which location is her actual residence.  *Whitacker-Reid*, 160 A.3d at 916.  Before conducting this comparative analysis, we must fix the relevant time period for assessing E.F.'s physical presence in the District.  Contrary to the hearing officer's understanding, the period is not limited to a

single day.  The residency inquiry includes an examination of both where E.F. and her children actually resided during the previous school year and where they intended to reside in the coming school year.

The Pennsylvania Supreme Court's analysis in the factually similar *Cumberland Valley* case distinguishes between residency and domicile, and shows that where the parent resided in prior years and intended to reside is relevant to the inquiry.  There, just before the new school year began in August, the mother, who was the primary caregiver to her two sons, moved with them from the house that she and her husband owned in Franklin County to a townhouse she leased in the Cumberland Valley School District in Cumberland County.  She moved to live closer to a private school that the younger son was going to attend.  The family's plan was for the younger son to attend a private school for seven years.  The mother enrolled her older son, who required special education services, in a public school in the Cumberland Valley School District where the townhouse was located.  She moved her and her sons' clothing, books, supplies, furniture and possessions to the townhouse where they spent weekdays and weeknights.  They spent weekends and school vacations living with the father at the family's house in Franklin County.

In December, the mother enrolled the older son in a private school for children with learning disabilities located in Montgomery County.  The Cumberland Valley School District refused to pay his tuition for past or future school years because it determined that the son was not, and never had been, a resident of the district.

After a residency hearing, the school board issued its adjudication of non-residency.  It concluded that the mother "resided" in Franklin County.  The school board

interpreted the term "resides" in the School Code to mean the custodial parent's "primary residence" or "domicile." The board found that the townhouse was a temporary residence for the mother and her sons "existing only for their temporary convenience" and that the parents did not intend to make the townhouse their primary residence. It also found that the family's primary residence was in Franklin County, making that their domicile.

On appeal, the Common Pleas Court reversed the school board's decision, concluding that the board erroneously interpreted the term "resides" by equating it with primary residence or domicile. Instead, the court applied the common law definitions of "residence" and "domicile," defining "resides" as "a factual place of abode evidenced by a person's physical presence in a particular place," and "domicile" as a person's "fixed and permanent home and principal establishment" to which he always intends to return whenever he is absent from there. *Cumberland Valley*, 744 A.2d at 1274-75 (quoting Common Pleas Court opinion). After comparing the mother's contacts with and activities in the two places, the court held that the mother was a resident of the Cumberland Valley School District. The Commonwealth Court affirmed, adopting the trial court's reasoning. *Id.*

Affirming the Commonwealth Court, the Pennsylvania Supreme Court stated that the lower courts "properly interpreted the term 'resides' as it is used" in the School Code. *Cumberland Valley*, 744 A.2d at 1274. Emphasizing that the legislature did not intend to "equate residence with domicile," the Court stated that "[i]n choosing the term 'resides' rather than terms such as 'has a primary residence' or 'is domiciled' in the school district, the legislature did not require that parents do anything more than reside in a school district in order to enroll their children in the local public schools." *Id.* at 1274-75. The Supreme

Court stated that the record showed that the mother and her sons did "not merely visit the townhouse. . . . they actually live[d] there." *Id.* Noting that they "stay[ed] there during the days and sle[pt] there at night" and that "[c]lothing, books, and supplies [were] kept there," the Court concluded that "these facts reveal that [the mother] and her two sons live at the townhouse and are, therefore, residents of the Cumberland [Valley School] District." *Id.*

The school and living arrangements in *Cumberland Valley* were similar to those here. In that case, the mother moved with her children from the house that she owned and had lived in for many years to a house that she leased in another school district for the purpose of sending one of her children to a private school. As E.F. did, the mother enrolled her other child in a public school in the new district. The mother and sons in *Cumberland Valley* returned to their home in Franklin County on weekends and vacations, just as E.F. and her children returned to the house in the District on weekends and vacations. Thus, as the District decided here, the *Cumberland Valley* court held that the mother was a resident of the school district in which they were actually living.

In determining whether the mother and sons "actually lived" in the townhouse, the court considered the family's physical location, living patterns and activities over the course of the prior school year, not just on the date that the district determined them to be non-residents. Additionally, although it did not consider the parents' future intentions as dispositive, the Court also took into account the parents' plans regarding their sons' future education needs, particularly the family's "intention" that the younger son attend the private school in Cumberland County for seven years until he graduated. *Cumberland Valley*, 744 A.2d at 1273.

Other courts have considered evidence of where a family resided *before* the non-residency determination to provide context to the residency inquiry. For example, in *Paek*, 923 A.2d 563, after the Pen Argyl Area School District spent the spring of 2005 to January of 2006 investigating the mother's physical presence at two properties that she owned, one in the district and one in the Pleasant Valley School District, the hearing officer considered evidence of the family's physical presence and activities for the previous four years. From 1997 to 2002, the mother and her two daughters resided in a two-bedroom apartment they rented from the mother's boyfriend, which was located in the Pen Argyl Area School District where the daughters attended school. In the fall of 2002, the mother and children moved to a three-bedroom home the mother's boyfriend owned, which was in the Pleasant Valley School District and two miles from the apartment in the Pen Argyl Area School District. At that time, the mother enrolled the children in the Pleasant Valley school district, where they attended school for the 2002-03 school year. Dissatisfied with the education her daughters were receiving, the mother re-enrolled her daughters in the Pen Argyl Area school district. In the spring of 2005, the Pen Argyle Area School District's attendance officer began surveilling the mother and her daughters' whereabouts. In February of 2006, the district determined that the family did not reside there.

At the hearing, the mother testified that she considered the apartment in the Pen Argyle Area School District to be her primary residence. She owned the furnished home, received mail there and paid school taxes. Her driver's license, pay stubs, bank account and electric bill listed that address. The children's friends visited after school, and relatives occasionally visited them there. However, she also testified that she and her

children slept there only two nights a week.  Additionally, in the mornings after they slept at the apartment, before driving to school they returned to their house in the Pleasant Valley School District to shower, eat breakfast and play with their four dogs.  Comparing the mother's contacts and activities in the two homes, the hearing officer determined that the mother resided at the Pleasant Valley home, not the Pen Argyl home.

The Commonwealth Court upheld the non-residency determination, finding that the mother did not maintain a "physical presence" at the home in the Pen Argyl School District as it was not "a residence in any sense of the word."  *Paek*, 923 A.2d at 566-67.  The court concluded that the apartment "was only maintained because [the mother] was not happy with" the schools in the district where she actually resided, and that she was "school shopping."  *Id.* at 567.  It opined that "[b]ecause the prevention of 'school shopping' is the purpose behind . . . Section 1302 of the School Code, parents cannot simply rent or buy multiple properties in several school districts and then choose between those properties on a given day just so their children can attend a particular school."  *Id.*[54] *See also Behm*, 996 A.2d 60 (where the school district began investigating the family's residency near the end of the school year in May, it was proper for the hearing officer in August to consider evidence of where the family had resided for the prior three years to aid in evaluating the school district's determination that the family members were not residents of the district for the upcoming school year).

---

[54] When analyzing the competing residency requirements of Pennsylvania and Maryland, the hearing officer quoted this admonition by the *Paek* Court and concluded that it applied to E.F.  He stated that she could not "simply rent or buy multiple properties in several school districts and then choose between those properties *on a given day* just to secure tuition reimbursement."  Final Decision at 7 (emphasis added).

These cases teach that where the living arrangements varied over time, evidence of the family's physical presence during the school year in question and the preceding years is relevant to the residency inquiry. Thus, we conclude that where E.F. resided during the school year preceding the date of the attempted enrollment and where she intended to live after the enrollment date is relevant to the residency determination.

The hearing officer's single-day look at where a parent resides actually facilitates school shopping. Parents who own or rent two homes could stay at the home in the district where they want their children to attend school on the day they apply to enroll their child and then reside in the home outside the district the rest of the year. In that event, parents would be considered residents of a district where they have no intention of living. This possibility demonstrates the relevance of the parents' residency prior to and intended residency after the enrollment date.

Assessing E.F.'s physical presence only as of the date of enrollment does not answer the question of where she intended to reside during the coming school year. Though not dispositive, her intended residence could show whether her physical location at the time of the attempted enrollment and throughout the summer was a real change in her factual place of abode or reflected a temporary, summer residence with plans to resume residing during the next school year in the same place with the same living arrangements outside the District as during the previous school year. Consequently, in determining E.F.'s residency for enrollment purposes, the hearing officer erred in considering only where she was on the day of the attempted enrollment.

E.F.'s second claim of legal error is without merit. Contrary to E.F.'s contention, the hearing officer did not apply Maryland law to determine her residency. Rather, he

cited Maryland's residency requirements to show that E.F. was effectively claiming simultaneous residency in two school districts, which Pennsylvania law prohibits. As he stated in his final decision, the

> parent cannot simply rent or buy multiple properties in several school districts and then choose between those properties *on a given day* just to secure tuition reimbursement. . . . [E.F.] cannot claim residency within the District *only* during the attempted re-enrollment in the summer of 2016 while simultaneously claiming residency in [Maryland] continuously through the 2015-16 and 2016-17 school years.[55]

As to E.F.'s claims that the hearing officer committed legal errors, we conclude that the hearing officer erred when he limited the time period for examining E.F.'s physical presence to the day of the attempted enrollment and when he determined that any evidence of where E.F. intended to reside in the future could not be considered. But, he did not impermissibly apply Maryland law in deciding whether E.F. met the residency requirements under Pennsylvania law.

The legal error does not affect the hearing officer's conclusion because his findings of fact necessary to support the adjudication were supported by substantial evidence. Although he incorrectly focused only on where E.F. was physically on June 20, 2016, he made factual findings regarding where she resided during the previous and subsequent school years. Because he examined where she and her children slept, what activities they engaged in during the day, what kinds of clothing and furniture were kept at each house and E.F.'s work schedule, he developed a thorough record of where they resided the previous year and intended to reside in the coming school year.

---

[55] Final Decision at 7 (emphasis added). In discussing the competing residency requirements of the two states, the hearing officer revealed the pitfalls in limiting the residency inquiry to the date of application for enrollment.

Substantial evidence supported the hearing officer's finding that E.F., A.P. and his sisters resided in Maryland during the 2015-16 school year, which ran from August 2015 through June 20, 2016. E.F. spent the school week in Maryland with her children except when she was working in Philadelphia as an emergency room physician. During the school year, she worked only eight shifts per month, and they did not all fall on weeknights. Additionally, she conceded that she "maintained a physical presence in the Maryland Home throughout the 2015-2016 school year."

There is also substantial evidence supporting the District's determination that at the time of the attempted enrollment, E.F. intended to continue the same school, work and living arrangements during the 2016-17 school year that she had in the previous one and that she was still residing in Maryland. E.F. had a two-year lease that was not due to expire for another year. When the 2015-16 school year ended, she did not pack up the house in Maryland or bring any extra belongings to Pennsylvania. Instead, the family left "everything" there so that "it was waiting for [them] when [they] got back." She waited to register A.P. until her daughters' last school day in Maryland. She did not withdraw her daughters from the Maryland public school and did not attempt to enroll them in the District for the next school year.

E.F.'s statement in her affidavit that when she applied to enroll A.P. she "fully intended for [him] to attend school in the District for the 2016-17 school year, based upon the placement options to be presented" is belied by the record. The record shows that she planned to send her son to Ivymount in 2016-17 regardless of what the District offered her. On June 1, 2016, she signed an agreement with Ivymount for the 2016-17 school year and paid a $4,685.00 deposit to secure his enrollment. At the July 1, 2016 enrollment

meeting, E.F. told the registrar that A.P. was attending school out-of-state and she wanted to continue sending him there for the upcoming school year because the District was unable to educate him. Four days later, she told Fraser that A.P. has special needs the District "cannot meet," and he requires "a continued out of district school placement." She also told her that "he has thrived at Ivymount."

There is also substantial evidence that E.F., A.P. and his sisters resided in Maryland during the 2016-17 school year. The living and work arrangements for the family were no different than they had been during the previous school year. A.P. attended Ivymount and his sisters attended Maryland public schools during the weekdays, sleeping in their Maryland house on school nights. E.F. worked the same limited number of nightshifts in Philadelphia.

Considering the evidence of where E.F. and her children resided the previous school year and where they intended to reside during the next school year together with the other evidence, we hold that substantial evidence supports the District's determination of non-residency. The hearing officer's findings that E.F. and her children resided in Maryland during the 2015-16 and 2016-17 school years are supported by substantial evidence. There is also substantial evidence showing that at the time of the attempted enrollment, E.F. intended to reside in Maryland during the upcoming school year. Thus, although the hearing officer erred when he limited the relevant time period for assessing E.F.'s physical presence to the day she attempted to enroll A.P., substantial evidence supports the District's determination of non-residency. Consequently, the error was harmless.[56]

---

[56] Because the question of where E.F. resided on June 20, 2016 alone does not control the residency determination, it is unnecessary to consider the factual disputes about where E.F. and her

**Conclusion**

The hearing officer's findings of fact were supported by substantial evidence. However, he erred in limiting the relevant time period for assessing where E.F. was physically residing to the date she attempted to enroll A.P. Nevertheless, because his ultimate conclusion that the District's determination of non-residency was supported by substantial evidence was correct, the legal error was harmless. Therefore, we shall affirm the ODR's decision upholding the District's determination of non-residency and grant judgment in favor of the District.

---

children were physically located on the single day that she applied online to enroll A.P. in the District. Thus, even if A.P. had not attended an ESY session that summer and E.F. had not spent any time in Maryland that entire summer, the evidence supports a finding that E.F. resided in Maryland during the prior school year and intended to continue residing there in the coming school year.